IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 16, 2019 Session

## JAMES V. HOLLEMAN v. BARBARA J. HOLLEMAN

**Appeal from the Chancery Court for Knox County**
**No. 163466-1          Clarence E. Pridemore, Jr., Chancellor**

———————————————

**No. E2018-00451-COA-R3-CV**

———————————————

In this post-divorce action, the trial court denied the wife's request for relief from a prior judgment and ordered the parties to comply with their written marital dissolution agreement regarding the sale of a parcel of marital real property. Following numerous motions filed by the parties, including several motions for recusal filed by the wife, the trial court eventually granted recusal. The newly assigned trial court judge held a hearing to consider pending motions and determine the status of the case, and the wife filed another motion to recuse shortly after that hearing. The trial court entered a subsequent order, wherein the court denied recusal and instructed the Clerk and Master to select a realtor and sell the parcel of property on the parties' behalf. Wife subsequently filed a motion seeking "relief of void orders," pursuant to Tennessee Rule of Civil Procedure 60, which was denied by the trial court. Wife filed a second but different Rule 60 motion thereafter, which was also denied by the trial court. Wife timely appealed. Discerning no error, we affirm the trial court's judgment in this matter. We grant Husband's request for attorney's fees pursuant to the parties' MDA and remand this issue to the trial court for a determination of a reasonable award of attorney's fees in favor of Husband. We deny Wife's motions seeking supplementation of the record and consideration of post-judgment facts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Barbara J. Holleman, Knoxville, Tennessee, Pro Se.

William A. Mynatt, Jr., and Robyn J. Askew, Knoxville, Tennessee, for the appellee, James V. Holleman.

**OPINION**

## I. Factual and Procedural Background

This divorce action was filed by the plaintiff, James V. Holleman ("Husband"), in the Knox County Chancery Court ("trial court") on February 17, 2005. Husband sought a divorce from his wife, Barbara J. Holleman ("Wife"), based on irreconcilable differences or, in the alternative, Wife's alleged inappropriate marital conduct. Husband asked the trial court to approve a proposed permanent parenting plan attached to his complaint and to equitably divide the parties' marital property and debts.

Following a hearing conducted on September 27, 2006, the trial court entered a final judgment of divorce on October 5, 2006. The trial court incorporated within the judgment a Marital Dissolution Agreement ("MDA") executed by the parties. The MDA provided, in relevant portion, that a parcel of real property located on Monterey Road in Loudon County ("the Monterey Property") would be placed on the market for sale and further specified how this task was to be accomplished. The MDA also provided that the proceeds from the sale, following payment of the mortgage balance, would be divided equally between the parties. The MDA further provided that until the Monterey Property was sold, Husband would be responsible for paying any mortgage, taxes, insurance, or other expenses related to that property.

On February 9, 2007, Husband filed a petition for contempt, alleging that the parties had received a fair and reasonable offer to purchase the Monterey Property at a price that Husband believed to be above the current market value. Alleging that Wife had refused to sign the contract or otherwise cooperate with the sale of the Monterey Property, Husband sought an order from the trial court directing Wife to comply with the MDA's provisions regarding the sale of the property.

Wife filed a response to the petition on March 14, 2007, asserting that Husband, by not listing the property with a realtor, had failed to follow the procedure for sale of the Monterey Property set forth in the MDA. Wife therefore asserted that she did not trust Husband's claim that the purchase offer was a "good deal" and argued that she was not obligated to sign the contract for purchase.

On April 23, 2010, Wife filed a "Petition" in the trial court, alleging, *inter alia*, that Husband had not followed the proper procedure for marketing the Monterey Property and instead had rented it for one-half of its fair market rental value without consulting her. Wife stated that Husband had also obtained a modification of the Deed of Trust concerning the Monterey Property without notifying her and had failed to share the rents collected from the property with her. Wife further alleged that Husband had not disclosed all of his assets at the time the parties entered into the MDA.

Wife sought a finding of contempt based on Husband's actions concerning the Monterey Property. Wife also alleged that Husband had been unjustly enriched by his rental of the property and that Husband was guilty of misrepresentation and fraudulent concealment. Wife sought an award of compensatory and punitive damages, as well as attorney's fees, but she did not ask that the MDA be held invalid. Husband filed an answer, stating that he had inadvertently failed to disclose his interest in two business entities at the time of execution of the MDA. Husband also admitted that he had rented the Monterey Property, but he averred that the expenses related to the property exceeded the rental income. The trial court conducted a hearing concerning Wife's petition over four non-consecutive days in August, September, and November 2011.

On January 31, 2012, the trial court entered a memorandum opinion, wherein the court stated that Wife had filed her petition on April 23, 2010, more than three years following entry of the final decree, seeking relief from that judgment. The court explained that Wife had alleged fraud and sought damages based on Husband's act of executing the MDA while "withholding and concealing two business interests, an interest in SW Property Partners, G.P., and an interest in Harbour Gate, LLC." The court noted that Wife also sought payment of one-half of the rents collected from the Monterey Property.

As the trial court found in its memorandum opinion, Husband admitted that he failed to disclose his interest in the two above-named business associations, but he claimed that the nondisclosures were inadvertent. Husband also claimed that SW Property Partners, G.P., had no value at the time of the divorce. Husband asserted that he was entitled to receive the rental proceeds from the Monterey Property. Husband further averred that he should be granted a setoff against Wife's interest in the rental proceeds, if any, because Wife had refused to allow the sale of said property.

Relying on our Supreme Court's opinion in *Black v. Black*, 166 S.W.3d 699, 703-06 (Tenn. 2005), the trial court determined in its memorandum opinion that when a judgment is obtained by fraud, the defrauded party can either attempt to have the judgment set aside, pursuant to Tennessee Rule of Civil Procedure 60.02, or file a common law action for damages. The court found that in this case, Wife had filed a common law action for damages. As the court noted, a motion under Tennessee Rule of Civil Procedure 60.02(2) would have required filing within one year from the judgment. The court further noted that Wife could not bring an independent action under the savings provision of Rule 60.02 because her petition alleged intrinsic rather than extrinsic fraud. *See id*. at 703. Regarding Wife's common law action for damages, the trial court found that such an action also had to be based upon extrinsic rather than intrinsic fraud. The court therefore determined that Wife's claim in this regard was without merit.

The trial court found that Husband had sold his interest in Harbour Gate on October 5, 2006, for $133,814. According to the court, the parties had stipulated that they intended for their marital estate to be divided equally under the MDA. The court therefore found that if Wife had filed a timely motion pursuant to Rule 60.02, she would have been entitled to one-half of the Harbour Gate sale proceeds.

The trial court stated that Husband had testified that SW Property Partners, G.P., had no value at the time of the divorce. According to the court, Wife called an accountant as an expert witness to testify regarding the value of this business interest. The court noted that the accountant had testified that his opinion of value was based on a "rough guess" and included some speculation. The court therefore found the expert's opinion to be "without sufficient basis and unpersuasive."

Concerning the Monterey Property, the trial court found that the parties owned this property as tenants in common following entry of the divorce judgment. The court discussed the MDA's provision concerning the Monterey Property, which stated that the property "shall be placed on the market and sold as soon as possible" and "shall be listed with a realtor." The MDA provided that until the Monterey Property was sold, Husband would be responsible for paying all debt and expenses associated with the property. The court ultimately concluded that Wife was entitled to a judgment in the amount of $7,500 for her share of the rents collected from November 2007 to April 2010.[1] All other claims were dismissed.

The trial court subsequently entered a judgment on March 8, 2012, awarding to Wife $7,500 for her share of the Monterey Property rents collected from November 2007 through April 2010. The court dismissed all other pending claims with prejudice. No appeal was filed concerning this judgment.

On April 3, 2012, Husband filed a motion seeking to enforce the MDA's provisions with regard to the sale of the Monterey Property. Husband argued that Wife had rejected four prior offers to purchase the property and refused to sign a realtor listing agreement. Husband asked the trial court to enforce the MDA by ordering Wife to execute the necessary documents to effectuate the Monterey Property's sale. Husband also sought an award of attorney's fees.

Wife filed a motion seeking recusal of the trial court judge, Chancellor John F. Weaver, on May 21, 2012. Wife averred that the trial court judge had shown bias and

---

[1] The trial court noted that Wife had filed a previous motion concerning the rents in November 2007, which was dismissed for lack of prosecution. Accordingly, the court found that *res judicata* barred Wife's claim for rents that accrued from the date of the October 2006 final decree to the filing of her motion in November 2007.

prejudice against her and in favor of her former counsel, who had recently withdrawn from his representation of her. Wife further averred that the trial court judge had made a "hostile, discriminatory comment" to Wife, allegedly concerning her requested accommodation of a disability. Wife also complained about the trial court's findings made in its earlier memorandum opinion and about an alleged *ex parte* communication that occurred on the first day of trial between the trial court judge and a senior partner from Wife's former counsel's law firm. The trial court entered an order on June 21, 2012, denying Wife's recusal motion.

Meanwhile, on June 20, 2012, Wife filed a "Motion for Reconsideration of Motion for Recusal of this Court," again questioning the trial court judge's impartiality. The trial court entered an order on July 6, 2012, denying Wife's motion.

On September 26, 2012, the trial court entered an order granting Husband's motion to enforce the MDA. The court directed that the parties would strictly follow the requirements of the MDA regarding the sale of the Monterey Property, such that each party would choose a realtor within thirty days and then those two realtors would choose a third realtor. The court also ordered that if a party was unable or unwilling to choose a realtor, the Clerk and Master would make that decision instead. No appeal was filed concerning this order. Thereafter, Husband filed a motion on January 15, 2013, seeking to enforce the court's order and find Wife in contempt because Wife had failed to sign the listing agreement after the realtors were chosen. The trial court entered an order on January 28, 2013, directing Wife to show cause why she should not be held in contempt for her failure to comply with the court's prior order.

Wife subsequently filed various motions seeking, *inter alia*, to have access to the Monterey Property, the ability to collect the rents, a finding of contempt against Husband, and reconsideration of the trial court's September 26, 2012 order. Wife also filed a motion seeking to invalidate or modify the MDA. On July 3, 2014, the trial court entered an order, stating in pertinent part:

> At the beginning of the hearing, counsel for the defendant stated that the defendant's Motion for Protective Order would become moot if the Court determined that it lacked jurisdiction to modify the parties' Marital Dissolution Agreement. The parties agreed before the Court that the Court could not modify the parties' Marital Dissolution Agreement. Furthermore, [Wife] withdrew her motions filed March 28, 2013 and January 27, 2014. During the hearing, [Wife] formally moved for the Court to recuse itself asserting that her constitutional rights were being violated. Subsequently, during the same hearing, [Wife] orally moved for the Court to recuse itself asserting that the Court was biased. The case has a tainted context, including among other things, a finding by the Court that the defendant had

committed intrinsic fraud in the original divorce action but that the Court could not grant any relief because, among other things, the limitations period had passed for granting relief as to redressing his intrinsic fraud. The case also involved a post judgment submission of a listing agreement on behalf of the defendant which involved false information as to the proposed listing agent. The Court's judgment of March 8, 2012, disposed of the issue of intrinsic fraud. Pursuant to the order entered April 29, 2013, the defendant withdrew his motion involving the listing agreement with false information. None of those matters has resulted in any forfeiture of either party's property interests under the Marital Dissolution Agreement. The Court is unaware of any constitutional violation or basis for bias.

The trial court accordingly ruled that it had no jurisdiction to modify the parties' MDA and that the MDA could not be modified on the basis of waiver, abandonment, or constructive fraud. The court denied Wife's oral motion for recusal. The court reaffirmed its earlier ruling that the parties should strictly follow the MDA's requirements to facilitate the sale of the Monterey Property.

On July 16, 2014, proceeding self-represented, Wife filed another motion seeking recusal of the trial court judge as well as "reconsideration" of the trial court's previous orders. The trial court entered an order on August 12, 2014, denying the motion to recuse and setting the motion for reconsideration for further hearing.

Wife subsequently filed numerous motions, including a "Petition for Partition in Kind," asking the trial court to partition the Monterey Property and divide it between the parties. In this petition, Wife purported to name American Fidelity Bank as an additional defendant, as well as a bank officer/trustee.

Following a hearing regarding Wife's motion for reconsideration on November 10, 2014, the trial court entered an order on December 10, 2014. In this order, the court again determined that it lacked any authority to "modify, set aside or refuse to enforce" the MDA and final decree of divorce while noting "its awareness of the wrong to [Wife] from the fraud of [Husband] in connection with" those documents. The court reaffirmed its earlier orders and directed the Clerk and Master to choose a realtor to market the Monterey Property. The court dismissed Wife's petition to partition the property as well as all other motions filed by Wife related to the property.

Wife subsequently filed a motion for recusal on January 7, 2015, and another such motion on January 16, 2015. Wife also filed motions seeking, *inter alia*, disqualification of the Clerk and Master and relief from the court's previous judgments. On March 31, 2015, the trial court entered an order denying the recusal motions and setting the other motions for further hearing. Following the entry of this order, Wife filed various

- 6 -

additional pleadings that were titled as "amendments" to earlier motions, as well as a subsequent motion for recusal and an amendment to that motion. The trial court entered an order on May 26, 2015, stating:

> [Wife's] MOTION FOR RELIEF FROM VOID JUDGMENTS RENDERED IN ERROR OF LAW and IN EXCESS OF JURISDICTION, as amended, and her MOTION SEEKING DISQUALIFICATION OF JUDICIAL OFFICER (CLERK AND MASTER) HOWARD G. HOGAN, FOR FAILURE TO COMPLY WITH COURT ORDER came to be heard on May 1, 2015. However, on May 8, 2015, [Wife] filed her seventh written motion for recusal since May 21, 2012, including written motions for reconsideration of recusal. [Wife] filed a written amendment to her motion on May 11, 2015. Most recently, the Court had denied [Wife's] fifth and sixth written motions for recusal by Memorandum Opinion and Order filed March 31, 2015, which is adopted and incorporated herein by reference.
>
> Originally, [Wife's] displeasure with the Court stemmed from its lack of jurisdiction to grant her relief from her former husband's intrinsic fraud by reason of the one year limitations period in Tenn. R. Civ. P. 60. *Black v. Black*, 166 S.W.3d 699, 703-06 (Tenn. 2005) (*accord Warwick v. Warwick*, 2012 WL 5960850 (Tenn. Ct. App. Nov. 29, 2012) (stating "*[B]lack* offers a thorough analysis of the availability of actions for fraud both within and outside the parameters of Rule 60.02")). [Wife] has become increasingly aggressive and hostile in her motions, with her motion filed May 8, 2015, stating that the Court is guilty of treason and suggesting that the Court may have committed a felony. Her disgust with the Court now stems from a confusion of the Court's lack of post judgment jurisdiction to modify a property division in a divorce with the Court's jurisdiction and ability to enforce a property division.
>
> Supreme Court Rule 10 B, § 1.02 states that "[w]hile the [disqualification] motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken." [Wife's] continuous filing of written recusal motions has greatly hampered the Court's ability to administer and dispose of the issues on the merits. The focus of the case has shifted from the merits of the issues to acting upon [Wife's] recusal motions. The above motion for relief and motion to disqualify the Clerk and Master were fully heard on May 1, 2015. To keep the case from being further stalled from a continuous battery of recusal

- 7 -

motions, good cause exists for the Court to rule upon [Wife's] motions heard on May 1, 2015.

The court accordingly denied Wife's pending motions. No appeal was filed concerning this order.

On May 29, 2015, Husband filed a motion seeking the trial court's approval regarding an offer to purchase the Monterey Property. Wife filed yet another recusal motion on July 8, 2015, along with various other motions. Husband asserts in his appellate brief that he provided a safe-harbor demand that Wife withdraw her pending motions and subsequently filed a motion for Tennessee Rule of Civil Procedure 11 sanctions on July 31, 2015, when Wife did not withdraw the motions.

On August 10, 2016, following the filing of numerous additional motions and liens by Wife, the trial court entered an order of recusal. Although the trial court judge concluded that there was no valid reason for recusal, the court's order stated that "the Court's recusal may serve to facilitate the reaching of the merits on any issues that may come before the Court." Following entry of this order, Wife filed a motion seeking an interlocutory appeal of the court's order of recusal, asserting that the trial court's recusal order violated her due process rights. By order dated September 30, 2016, the case was assigned to Chancellor Pridemore.

Following a hearing held before Chancellor Pridemore on July 12, 2017, regarding case status and pending motions, Wife filed a handwritten motion to recuse later that same day. Wife alleged, *inter alia*, that Chancellor Pridemore would "hardly allow [her] to speak" and "threatened her with incarceration if she did not be quiet." The trial court entered an order denying recusal the same day. Wife subsequently filed another recusal motion on July 21, 2017, and filed an amendment to the recusal motion on July 31, 2017.

On August 1, 2017, the trial court entered an order, stating:

It appearing to the Court that the staggering serial filings by [Wife] have dramatically escalated the court costs to over $2,000.00, and that such costs have been taxed to [Wife] by prior order, and it further appearing that the Clerk and Master has reported that despite making periodic payments into the Clerk's office on the outstanding costs, such payments are largely nominal and have failed to significantly impact the extraordinary amount of costs owed by [Wife], which continues to accrue due to [Wife's] continuous serial filings in this case and due to the numerous hearings and orders required to dispose of such filings, and for other good cause shown, it is accordingly **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

(1) [Wife] shall fully satisfy the following three (3) requirements before the Clerk and Master accepts for filing any further pleadings, motions, or any other documents presented by [Wife], or presented on [Wife's] behalf, or before the Clerk and Master issues any process on [Wife's] behalf, to wit:

(a) [Wife] shall fully pay into Court all unpaid court costs as reflected in the Clerk and Master's most current Statement of Cost; and

(b) [Wife] shall submit a bond to the Clerk and Master's office with good and sufficient surety for the payment of all future costs, or a cash bond to be held by the Clerk and Master in the registry of the Court in the amount of $2,000.00 as security for the payment of future costs; and

(c) [Wife] shall pay any filing fees for re-opening this case as may be required by applicable law and local rules.

(2) That until such time as [Wife] has fully satisfied the above three (3) requirements, the Clerk and Master is authorized and directed to reject all filings tendered by [Wife] or tendered on [Wife's] behalf in this cause, and to retain such filings as unfiled pleadings separate from the record of this proceeding; and the Clerk and Master is authorized and directed to refuse to issue service of process on [Wife's] behalf.

(3) That this Order shall be inapplicable to any attempt by [Wife] to file a Notice of Appeal from any appealable order in this proceeding.

Subsequently, on August 18, 2017, the trial court entered a "Final Order," stating that Wife's motions to recuse had been denied, that any motions made by Wife seeking to set aside the MDA were denied, and that the Monterey Property was to be listed and sold in accordance with the MDA and the court's prior orders. The court instructed the Clerk and Master to select a realtor and sell the Monterey Property on the parties' behalf. The court also assessed Rule 11 sanctions against Wife in the amount of $20,006.50, which the court directed would be paid from Wife's share of the proceeds from the sale of the Monterey Property. The court further struck any and all liens *lis pendens* filed by Wife and directed that the order would be considered final pursuant to Tennessee Rule of Civil Procedure 54.02.

Following entry of this order, Wife filed a *lis pendens* notice on September 15, 2017, along with a motion seeking "relief of void orders" and reimbursement of costs.

Wife amended this motion by filing dated October 5, 2017. On January 8, 2018, the trial court entered an order denying Wife's motions, finding them to be similar, if not identical, to her prior motions. The court further denied Wife's request for reimbursement of costs, dissolved all liens filed by Wife, reaffirmed its earlier orders, and certified the order to be final pursuant to Tennessee Rule of Civil Procedure 54.02.

On January 24, 2018, the Clerk and Master filed notice that a realtor had been selected to list the Monterey Property for sale. On February 7, 2018, Wife filed a *lis pendens* notice along with a motion seeking "relief of void orders." On February 8, 2018, the trial court entered an order denying Wife's motion, dismissing any liens, and directing the Clerk and Master to go forward with the sale of the Monterey Property. Wife filed a Notice of Appeal on March 9, 2018, from the trial court's February 8, 2018 order.

## II. Issues Presented

Wife presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by entering its February 8, 2018 order without conducting a hearing.

2. Whether the trial court erred by ordering the Monterey Property sold.

3. Whether the trial court violated the parties' right to contract without interference from the state.

4. Whether the trial court denied Wife an opportunity to be heard.

5. Whether the trial court allowed Wife's property to be taken without due process.

6. Whether the trial court had jurisdiction to alter its prior judgments.

Husband presents the following additional issues, which we have also restated slightly:

7. Whether the notice of appeal was timely filed.

8. Whether Husband is entitled to an award of attorney's fees on appeal.

### III. Standard of Review

Our Supreme Court has previously explained that when reviewing a trial court's ruling on a Tennessee Rule of Civil Procedure 60.02(3) motion to set aside a judgment as void, this Court should apply a *de novo* review with no presumption of correctness. *See Turner v. Turner*, 473 S.W.3d 257, 269 (Tenn. 2015). Any factual findings made by the trial court should be reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

### IV. Timeliness of Appeal

Husband has raised a threshold issue concerning the timeliness of Wife's notice of appeal. Husband argues that the trial court's January 8, 2018 order, which denied Wife's motion seeking relief from the court's August 2017 orders and also reaffirmed those orders, became final thirty days following entry because (1) Wife failed to file a timely notice of appeal from the January 8, 2018 order, which was certified as final pursuant to Tennessee Rule of Civil Procedure 54.02, and (2) Wife's later motion could not serve to toll the deadline for filing a notice of appeal. Husband contends that Wife's February 7, 2018 motion could not toll the time for filing a notice of appeal because it essentially was a motion to reconsider her earlier Rule 60 motion filed in September 2017. *See Willis v. West*, No. W2011-01856-COA-R3-CV, 2012 WL 2904035, at *5 (Tenn. Ct. App. July 17, 2012) ("[A]lthough the Rules do not prevent a party from filing more than one Rule 60.02 motion, a party's second Rule 60.02 motion that was predicated upon facts and issues identical to those presented in the party's first Rule 60.02 motion was properly denied on the grounds of *res judicata*.").

We disagree with Husband's contention. In her February 7, 2018 motion, Wife relied upon Tennessee Rule of Civil Procedure 60.02(3), which provides for relief from a final judgment or order when such order is void, and sought relief from all orders entered

subsequent to March 2012. Wife asserted in her February 7, 2018 motion that the trial court's previous orders entered subsequent to March 2012 were void, whereas Wife's September 2017 motion only sought to set aside the court's August 2017 orders as void. As such, Wife's February 7, 2018 motion sought different relief than her earlier motion and could not be considered simply a motion to reconsider the September 2017 motion.[2]

Insofar as Wife relied upon Tennessee Rule of Civil Procedure 60.02(3) in her February 7, 2018 motion, there exists no time limitation for such a motion. *See Turner*, 473 S.W.3d 257, 269 ("Rule 60.02 does not abrogate the longstanding rule that void judgments may be attacked at any time."); *Pittman v. Pittman*, No. 01-A-01-9301-CH-00014, 1994 WL 456348, at \*2 (Tenn. Ct. App. Aug. 24, 1994) ("[E]xcept for exceptional circumstances that might require a different rule, Tenn. R. Civ. P. 60.02's reasonable time limitation does not place a time limit on the right to challenge a judgment on the ground that it is void."). We therefore determine that Wife could challenge the trial court's previous orders based upon Tennessee Rule of Civil Procedure 60.02(3) in her February 7, 2018 motion. Because a timely notice of appeal was not filed from the trial court's prior orders, however, the trial court's February 8, 2018 order ruling on the Rule 60.02(3) motion is the only order that we may review in this appeal. *See Nagarajan v. Scheick*, No. M2000-02323-COA-R3-CV, 2003 WL 22989029, at \*3 (Tenn. Ct. App. Dec. 19, 2003) (explaining that when the plaintiff filed a Rule 60 motion following an order rather than a timely notice of appeal, the only remedy on appeal would be consideration of the correctness of the order on the Rule 60 motion).

## V. Denial of Relief Pursuant to Rule 60.02(3) and Validity of Previous Orders

Concerning the substance of Wife's motion filed pursuant to Tennessee Rule of Civil Procedure 60.02(3), Wife asserts that all orders following the trial court's ruling in March 2012 were void. Our Supreme Court has explained what constitutes a void judgment as follows:

> "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, [the] exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (internal citation omitted). A judgment rendered by a court lacking either personal or subject matter jurisdiction is void. *Ins. Corp. of Ireland,* 456

---

[2] Although we recognize that Wife filed an amendment to her September 2017 motion on October 5, 2017, and made assertions that arguably broadened the scope of the relief sought, we must still measure Wife's pleadings "by less stringent standards than those applied to pleadings prepared by lawyers." *See Stewart*, 368 S.W.3d at 462.

- 12 -

U.S. at 694, 102 S.Ct. 2099; *Hood v. Jenkins,* 432 S.W.3d 814, 825 (Tenn. 2013); *Gentry v. Gentry,* 924 S.W.2d 678, 680 (Tenn. 1996). Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when "its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered." *Giles v. State ex rel. Giles,* 191 Tenn. 538, 235 S.W.2d 24, 28 (1950); *see also Hood,* 432 S.W.3d at 825.

> A [judgment] is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the [judgment] is wholly outside of the pleadings, and no consent thereto appears. A [judgment] is void as to any person shown by the record itself not to have been before the Court in person, or by representation. A [judgment] not *prima facie* void is valid and binding . . . .
>
> All [judgments] not thus appearing on their face to be void are absolutely proof against collateral attack, and no parol proof is admissible on such an attack to show any defect in the proceedings, or in the [judgment].

*Gentry*, 924 S.W.2d at 680 (Tenn. 1996) (quoting William H. Inman, *Gibson's Suits in Chancery* § 228 at 219-20 (7th ed. 1988)). If the defect allegedly rendering the challenged judgment void is not apparent from the face of the judgment or the record of the proceeding from which the challenged judgment emanated and must instead be established by additional proof, the judgment is merely voidable, not void. *Hood*, 432 S.W.3d at 825.

*Turner*, 473 S.W.3d at 270-71 (footnote omitted).

In this matter, there is no question that the trial court maintained general jurisdiction over the subject matter in this divorce action. *See Brown v. Brown*, 296 S.W. 356, 361 (Tenn. 1927) ("The circuit and chancery courts of the state are given general jurisdiction of actions for divorce . . . ."). There is also no question that the trial court properly exercised personal jurisdiction over the parties, each of whom had personally appeared before the court. *See Turner*, 473 S.W.3d at 271. In short, nothing on the face of the record demonstrates that the trial court lacked subject matter or personal jurisdiction or that any of its prior orders were "wholly outside of the pleadings." *See id*. at 270-71. The trial court therefore correctly denied relief to Wife pursuant to Tennessee Rule of Civil Procedure 60.02(3) and properly enforced its previous valid orders. *See id*.

Therefore, Wife's remaining issues concerning the propriety of the trial court's previous orders enforcing the terms of the parties' MDA have been waived by her failure to timely appeal from those orders.

## VI. Entry of Order Without Hearing

Wife has also raised an issue concerning whether the trial court erred by entering its February 8, 2018 order without conducting a hearing. Wife's appellate brief, however, contains no argument or citations to authority concerning this issue. Tennessee Rule of Appellate Procedure 27(a)(7) provides that an appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." As our Supreme Court has explained, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). This Court has likewise elucidated that an issue may be considered waived when a party has failed to "cite authority for its arguments or to argue the issues in the body of its brief." *See Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); *see also McGarity v. Jerrolds*, 429 S.W.3d 562, 566 n.1 (Tenn. Ct. App. 2013) ("The failure to cite authority to support an argument on appeal constitutes a waiver of the issue.").[3]

According to our High Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009). We therefore determine that Wife has waived her issue concerning the trial court's failure to conduct a hearing before ruling on her February 7, 2018 motion.

## VII. Frivolous Appeal and Request for Attorney's Fees

Husband has requested an award of attorney's fees incurred in defending this appeal, which he characterizes as frivolous. As this Court has previously explained regarding frivolous appeals:

---

[3] We note that although we have considered Wife's general "Supplemental Authorities" provided to this Court via letter, we determine that the authorities cited therein are unavailing and irrelevant concerning this issue.

Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.

A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted). Similarly, Tennessee Code Annotated § 27-1-122 provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Exercising our discretion, we do not determine that this appeal was frivolous or taken solely for delay. We therefore decline to award attorney's fees to Husband as damages for the filing of a frivolous appeal.

As Husband also points out, however, the parties' MDA contains a provision that mandates an award of attorney's fees to a party who acts to enforce it. The MDA specifically provides:

In the event it becomes reasonably necessary for either party to seek the enforcement of any provision of this Judgment or to defend unsubstantiated claims under it, in addition to any other relief to which the enforcing or defending party may be adjudged entitled, he or she shall also be entitled to a judgment for reasonable expense, including attorney's fees incurred in seeking enforcement or defending unsubstantiated claims.

In *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017), our Supreme Court ruled as follows concerning an MDA that required an award of attorney's fees in favor of the party enforcing its terms:

[T]he Court of Appeals has no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or

- 15 -

successful party. When such a MDA exists, it is subject to the normal rules of contractual interpretation and enforcement. If the MDA is determined to be a valid and enforceable agreement, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands.

Accordingly, in this matter, based on the trial court's determination that the parties' MDA is valid and enforceable, we conclude that Husband is entitled to an award of attorney's fees due to his successful enforcement of the MDA's terms concerning the sale of the Monterey Property. We therefore remand this issue to the trial court for a determination of a reasonable award of attorney's fees in favor of Husband.

VIII. Pending Motions

Wife has filed multiple motions asking this Court to consider "post-judgment facts" and to allow supplementation of the record to correct an omission of one-half of a page of her "Response to Petition for Contempt" filed on March 14, 2007. With respect to the motion seeking supplementation, we do not deem such supplementation to be necessary because Wife's 2007 pleading has no bearing on this appeal. We therefore deny the motions to supplement.[4]

Concerning the motions seeking consideration of post-judgment facts, Tennessee Rule of Appellate Procedure 14 provides that this Court may, in its discretion, consider "facts concerning the action that occurred after the judgment." However, the facts enumerated in Wife's motions, which Wife requests this Court to consider as post-judgment facts, actually relate to filings and events occurring before entry of the February 8, 2018 final order and are readily discernible from the appellate record. For this reason, we determine that Wife's motions seeking consideration of post-judgment facts should also be denied. *See Painter v. Toyo Kogyo of Japan*, 682 S.W.2d 944, 952 (Tenn. Ct. App. 1984) (explaining that this Court could not consider facts pursuant to Rule 14 that were "not post-judgment in nature").

---

[4] We have fully considered Wife's amendment, filed on April 16, 2019, to her "Second Motion to Supplement Record to Complete Transmission of 'Entire Record' to Court of Appeals with 'No Omissions' as per Chancery Court Order entered on April 30, 2018 AND Motion to Supplement Record to Comply with 'Certificate of Appellate Record' executed on July 13, 2018 [by] Chancery Court Clerk and Master Howard Hogan, that ' . . . Items are Originals or True Copies of All of the Designated Papers on File in my Office in the Captioned Case,'" and we have noted Wife's amendments to the previously filed motions as outlined therein.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in this matter. We grant Husband's request for attorney's fees pursuant to the parties' MDA and remand this issue to the trial court for a determination of a reasonable award of attorney's fees in favor of Husband. We deny Wife's motions seeking supplementation of the record and consideration of post-judgment facts. Costs on appeal are taxed to the appellant, Barbara J. Holleman.

_____
THOMAS R. FRIERSON, II, JUDGE